UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Carlson & Lyter Distributing, Inc., Josephine A. Crawford, and Joan Carlson, <br><br> Plaintiffs, <br><br> v. <br><br> United States Liability Insurance Company, <br><br> Defendant. | Case No. 13-cv-2493 (SRN/LIB) <br><br> **MEMORANDUM OPINION AND ORDER** |

Taylor D. Tarvestad-Sztainer and James F. Baldwin, Moss & Barnett, PA, 90 South Seventh Street, Suite 4800, Minneapolis, Minnesota 55402, for Plaintiffs.

Britton D. Weimer, Jones Satre & Weimer PLLC, 7900 Xerxes Avenue South, Suite 820, Bloomington, Minnesota 55431, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss.  (Def.'s Mot. to Dismiss [Doc. No. 9].)  For the reasons that follow, the Court denies Defendant's motion.

## II.   BACKGROUND

### A. The Parties

Plaintiff Carlson & Lyter Distributing, Inc. ("C&L") is a Minnesota corporation, headquartered in Sauk Rapids, Minnesota.  (Compl. ¶ 2 [Doc. No. 1].)  Plaintiff Josephine Crawford ("Crawford") is a Minnesota resident, and a director and officer of

1

C&L.  (Id. ¶ 4.)  Plaintiff Joan Carlson ("Carlson") is also a Minnesota resident, and a director and officer of C&L.  (Id. ¶ 3.)

Defendant United States Liability Insurance Company ("USLI") is a Pennsylvania corporation with its principal place of business in Pennsylvania.  (Id. ¶ 5.)  USLI transacts insurance business in Minnesota.  (Id.)

**B. The Policy**

On or about November 15, 2009, USLI issued an Employment Practices Liability Policy ("the Policy"), No. EPL1017094, to Plaintiffs, providing them with business and employment-related coverage from November 15, 2009 to November 15, 2012.[1]  (Id. ¶ 8.)  In relevant part, the Policy states:

> I.   INSURING AGREEMENT
>
>   A. The **Company** will pay on behalf of the **Insured**, **Loss** in excess of the Retention not exceeding the Limit of Liability shown on the policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during any Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.
>
>   B. The **Company** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent.

(USLI Employment Practices Liability Policy, Section I, Ex. A to Compl. [Doc. No. 1-1].)

---

[1]  C&L is the named Insured and Parent Organization under the Policy.  Carlson and Crawford are "Individual Insureds" under the Policy, due to their status as directors, officers, and employees of C&L.  (USLI Employment Practices Liability Policy, Section III(I), Ex. A to Compl. [Doc. No. 1-1].)

2

The Policy set forth various definitions, including:

B. **"Claim"** means:

    (1) any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Act**; or

    (2) any proceeding initiated against any **Insured**, including any appeal therefrom, seeking to hold such **Insured** responsible for a **Wrongful Act**, including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal therefrom;

K. **"Loss"** means damages and settlements, front pay and back pay, and pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award or an express obligation to make payments in the event of the termination of employment.

R. **"Wrongful Act"** means any actual or alleged act of:

    (1) **Discrimination**; or
    (2) **Harassment**; or
    (3) **Retaliation**; or
    (4) **Wrongful Termination**; or
    (5) **Workplace Tort** . . .

    . . . committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such, involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization** or asserted by any **Employee**, former **Employee** or applicant for employment with the **Organization** against an **Individual Insured** because of his/her status as such.

S. **"Wrongful Termination"** means the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any **Employee** in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment.

(Id. at Section III(B), (K), (R), (S).)

Further, the Policy set forth various exclusions, including:

B.  The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** . . . in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

> (1) conduct of the **Insured** or at the **Insured's** direction that is fraudulent, dishonest, or criminal provided that this exclusion will not apply to:
>
>> (a) **Defense Costs** incurred until such conduct is established to be fraudulent, dishonest or criminal by final and non-appealable judgment or adjudication;
>>
>> (b) the strictly vicarious liability of the **Insured** for the fraudulent, dishonest or criminal conduct of another **Insured** . . .

C.  The **Company** shall not be liable to make payment for **Loss** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

> (1) the **Insured's** actual or alleged liability for damages under any express employment contract or express employment agreement; provided that this exclusion shall not apply to liability for a **Wrongful Act** which the **Insured** would have in the absence of such contract or agreement . . .

(Id. at Sections IV(B), (C).)

Finally, the Policy provided terms concerning defense and settlement:

Except as otherwise provided in this Policy, if a **Claim** is made against an **Insured** for **Loss** that is both covered and uncovered by this Policy, the **Company** will pay one hundred percent (100%) of the **Defense Costs** for the **Claim** until such time that the Limits of Liability of this policy are exhausted by payment of a covered **Loss** or the **Claim** for the covered **Loss** is resolved by settlement, verdict, or summary judgment.

(Id. at Section VIII(B).)

4

**C. Perryman Litigation**

On September 19, 2011, Bernadette Perryman ("Perryman") sued Joan Carlson and Josephine Crawford, individually and as trustees of the Arland G. Carlson 2007 Revocable Trust ("the Trust"), C&L, and other entities in Benton County, Minnesota. (Compl., Perryman v. Carlson et al., No. 05-cv-11-1964 (Benton Cty. Ct. Minn.) ("Perryman Complaint"), Ex. B to Compl. [Doc. No. 1-2].)  Until her termination on July 14, 2011, Perryman was President, Chief Executive Officer, Equity Manager, director, and shareholder of C&L.  (Id. ¶ 5.)

The Perryman Complaint alleges that Carlson and Crawford collaborated to "squeeze-out" Perryman—efforts which culminated at a board meeting on July 14, 2011. (Id. ¶¶ 1, 52.)  At this meeting, C&L's Directors were present: Carlson, Crawford, and Perryman.  (Id. ¶ 52.)  Michael Bengtson, a non-director and C&L's Chief Financial Officer, attended as well.  (Id. ¶¶ 50, 52.)  By vote of the Directors, Bengtson was elected Spokesperson and Secretary for the meeting.  (Mins. of the C&L Board Meeting at 1, Ex. E to Pls.' Sur-Reply Mem. in Opp'n to Def.'s Mot. to Dismiss [Doc. No. 23-1].) Bengtson stated that a majority of the Board, Carlson and Crawford, had decided to terminate Perryman's employment on the basis of Perryman's alleged misconduct, which included: (1) disregarding the requirements and duties of a Chief Executive Officer and Equity Manger; (2) failing to oversee C&L's operations and expenses properly; (3) failing to reduce excess discretionary expenses in light of declining revenues; and (4) giving time and company resources to organizations that did not relate to C&L's business.  (Id.)  According to the minutes, Bengtson gave Perryman "the opportunity to

5

resign from all of her positions with the Corporation," and "as consideration for such resignation also offered certain benefits, terms and conditions as set forth in a written offer letter dated July 14, 2011." (Id.) Perryman claims that Bengtson told her that if she did not resign from her positions with C&L, she would be terminated for "justifiable cause." (Perryman Compl. ¶¶ 56, 58.) Faced with the possibility of such a termination, and unable to negotiate, discuss, or otherwise consider the documents properly, Perryman claims that she signed two resignation letters, whose terms were effective immediately. (Id. ¶ 60; Mins. of the C&L Board Meeting at 2.) Perryman, Carlson, and Crawford signed the written offer letter. (Mins. of the C&L Board Meeting at 2.) The minutes from the board meeting were signed by Bengtson, and accepted and approved by Carlson and Crawford. (Id. at 7.)

The Perryman Complaint contains the following counts: (1) declaratory judgment pursuant to Minnesota Statute § 555.01 *et seq.*; (2) breaches of fiduciary duty; (3) aiding and abetting tortious conduct; (4) equitable relief; (5) tortious interference with contract and prospective economic advantage; (6) civil conspiracy; and (7) defamation. (Perryman Compl. ¶¶ 66-97.) In Count One, Perryman seeks a declaratory judgment stating in part that "her employment with C&L, including her positions as an officer, director and employee and Equity manager were unlawfully terminated by Defendants' actions at and prior to the July 14, 2011 Board meeting." (Id. ¶ 67.) The Prayer for Relief requests the same:

> An order pursuant to Minn. Stat. § 555.01 et seq. declaring that (a) Perryman's employment with C&L, including her positions as an officer, director and employee and Equity Manager, and her position as trustee and

6

> voting trustee of the Carlson Revocable Trust, were unlawfully terminated by Defendants' actions at and prior to the July 14, 2011 Board meeting; (b) that the July 14, 2011 resignation letters are unenforceable, void or, at Perryman's election, voidable; and (c) the restrictive covenants in Perryman's Employment Agreement are unenforceable.

(Id. at Prayer for Relief ¶ 1 (emphasis added).) Count Four alleges that Carlson, Crawford, and the Carlson Revocable Trust

> . . . treated Perryman in an unjust, illegal, fraudulent, and unfairly prejudicial manner in her capacity as a shareholder, officer, director, and employee of C&L, and as a trustee and voting trustee.  Furthermore, through Defendants' actions and omissions, Perryman has been deprived of her reasonable expectation to maintain her long-established rights and authority as an employee, officer, director, and shareholder of C&L and as a trustee of the Carlson Revocable Trust.

(Id. ¶ 80.)  Count Four also seeks damages for "lost compensation and benefits which Bernie [Perryman] reasonably anticipated would continue until her retirement at age 70." (Id. ¶ 81(c).)  And, Count Seven alleges that "Defendants terminated and/or threatened to terminate Perryman's employment without proper notice . . . ."  (Id. ¶ 90.)  Finally, the Prayer for Relief seeks an order directing the defendants to purchase Perryman's interest in C&L at a fair value; an award of damages in excess of fifty thousand dollars; an award of Perryman's costs, disbursements, attorneys' fees, expert fees, and expenses; an award of pre- and post-judgment interest; and other equitable relief deemed to be just and reasonable.  (Id. at Prayer for Relief ¶¶ 2-6.)

### D. Declaratory Judgment Action

On or about September 28, 2011, Plaintiffs in the instant case notified USLI of the Perryman litigation, and tendered for defense and indemnification the claims contained in the Perryman Complaint.  (Compl. ¶ 12.)  On or about October 13, 2011, USLI notified

7

Plaintiffs that it declined coverage under the Policy for the claims in the Perryman Complaint. (Id. ¶ 13.) On or about December 6, 2012, Plaintiffs asked USLI to reconsider the declination of coverage under the Policy. (Id. ¶ 15.) On or about December 20, 2012, USLI again declined coverage under the Policy. (Id. ¶ 16.) Consequently, Plaintiffs undertook their own defense of the Perryman litigation, incurring attorneys' fees and other expenses. (Id. ¶ 14.) In the summer of 2013, the Perryman litigation resolved under the terms of a confidential settlement. (Id. ¶ 17.)

The declaratory judgment action requests this Court to: (1) declare the rights, duties and obligations of the parties; (2) declare that USLI has a duty under the Policy to defend and indemnify Plaintiffs against all claims asserted in the Perryman Complaint; (3) direct entry of a money judgment in favor of Plaintiffs against USLI in an amount that includes: (a) all sums incurred by Plaintiffs to settle the Perryman litigation, (b) all sums incurred by Plaintiffs to defend against those claims contained in the Perryman Complaint, and (c) all attorneys' fees incurred by Plaintiffs in this declaratory judgment action; (4) award Plaintiffs interest; and (5) grant any further necessary and proper relief. (Id. at Prayer for Relief ¶¶ 1-5.)

On October 16, 2013, Defendant moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mot. to Dismiss [Doc. No. 9].) Plaintiffs opposed Defendant's motion on November 6, 2013. (Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss [Doc. No. 16].) On November 19, 2013, Defendant filed a reply. (Def.'s Reply Mem. for Mot. to Dismiss [Doc. No. 18].) On December 18, 2013, Plaintiffs filed a sur-reply. (Pls.' Sur-Reply Mem. in Opp'n to Def.'s Mot. to Dismiss

[Doc. No. 22].)  On February 7, 2014, this Court heard oral argument on Defendant's Motion to Dismiss.  (Feb. 7, 2014, Court Mins. [Doc. No. 24].)

### III. DISCUSSION

#### A. Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  The Court, however, need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  In short, this standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550 U.S. at 556.

#### B. Materials Considered

When considering a motion to dismiss under Rule 12(b)(6), the Court generally

9

must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

Both parties have submitted extra-pleading materials with their memoranda. Defendant includes the insurance policy issued to Plaintiffs for the policy period November 15, 2009 to November 15, 2012, and the Perryman Complaint. (USLI Employment Practices Liability Policy, Ex. A to Def.'s Mot. to Dismiss [Doc. No. 12-2]; Perryman Compl., Ex. B to Def.'s Mot. to Dismiss [Doc. No. 12-3].) Plaintiffs provide: (1) Bengtson's prepared statement at the July 14, 2011, C&L Board Meeting; (2) a letter from defense counsel, Britton Weimer, to Michael Bengtson, dated October 13, 2011, declining coverage under the Policy to Plaintiffs; (3) a letter from Plaintiffs' counsel, James Baldwin, dated December 6, 2012, demanding that Defendant remedy the alleged breach of obligations to Plaintiffs; (4) Weimer's letter in response to Baldwin, dated December 20, 2012, maintaining Defendant's decision to decline to defend; and (5) the minutes from the July 14, 2011, C&L board meeting. (Prepared Statement, Ex. A to Pls.' Opp'n to Def.'s Mot. to Dismiss [Doc. No. 16-3]; Oct. 13, 2011, Letter, Ex. B to Pls.' Opp'n to Def.'s Mot. to Dismiss [Doc. No. 16-3]; Dec. 6, 2012, Letter, Ex. C to Pls.' Opp'n to Def.'s Mot. to Dismiss [Doc. No. 16-3]; Dec. 20, 2012, Letter, Ex. D to Pls.' Opp'n to Def.'s Mot. to Dismiss [Doc. No. 16-3]; July 14, 2011, Meeting Mins., Ex. E to Pls.' Sur-Reply Mem. in Opp'n to Def.'s Mot. to Dismiss [Doc. No. 23-1].)

The Court views all of these materials as necessarily embraced by the pleadings.

The Court considers the Policy and the Perryman Complaint because they are referenced in and attached to the Complaint, and they form the basis of this dispute. (Compl. ¶¶ 8, 9.) The Court considers the letters dated October 13, 2011, December 6, 2012, and December 20, 2012, because they are referenced in the Complaint and form the basis of this dispute. (Id. ¶¶ 13, 15, 16.) Finally, the Court considers Bengtson's prepared statement at the July 14, 2011 C&L Board Meeting, as well as the minutes from this meeting, because they are referenced in the Perryman Complaint and inform whether there is coverage under the Policy based on the Perryman Complaint. (Perryman Compl. ¶¶ 52-53.) These materials are considered without converting this motion into one for summary judgment.

### C. Insurance Coverage

An insurer owes an insured two potential duties: the duty to defend and the duty to indemnify. Nelson v. Am. Home Assurance Co., 824 F. Supp. 2d 909, 915 (D. Minn. 2011). The duty to defend is broader than the duty to indemnify in three ways: (1) the duty to defend extends to every claim that arguably falls within the scope of coverage; (2) the duty to defend one claim creates a duty to defend all claims; and (3) the duty to defend exists regardless of the merits of the underlying claims. Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, 620 F.3d 926, 935 (8th Cir. 2010).

The duty to indemnify is triggered "only when liability is assessed on a claim within the policy coverage." Nelson v. Am. Home Assurance Co., No. 11-1161, 2011 WL 6151519, at *2 (D. Minn. Dec. 12, 2011). Where the underlying action settles before trial, the party seeking indemnification only needs to show that it could have been liable

under the facts shown at trial, and not whether it would have been. Netherlands Ins. Co. v. Main St. Ingredients, LLC, 745 F.3d 909, 913 (8th Cir. 2014). The settlement terms, however, must include the claims of the insured that were actually covered by the insurer's policy. Id.

In this case, the Policy covers "**Claims** . . . for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**." (USLI Employment Practices Liability Policy, Section I (emphasis in original).) The parties dispute whether coverage exists with respect to the terms "wrongful acts" and "solely."

1. **"Wrongful Act"**

Defendant argues that Plaintiffs are not entitled to coverage because they cannot show any "wrongful act." (Def.'s Mem. in Supp. of Mot. to Dismiss at 12 [Doc. No. 9].) Plaintiffs contend that the Perryman Complaint alleges a "wrongful act" against Defendants—namely, that of wrongful termination. (Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss at 15 [Doc. No. 16].)

The Policy defines "Wrongful Act" as "any actual or alleged act of":

> (1) **Discrimination**; or
> (2) **Harassment**; or
> (3) **Retaliation**; or
> (4) **Wrongful Termination**; or
> (5) **Workplace Tort** . . .
>
> . . . committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such, involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization** or asserted by any **Employee**, former **Employee** or applicant for employment with the **Organization** against an **Individual Insured** because of his/her status as such.

12

(USLI Employment Practices Liability Policy, Section III(B).)  "Wrongful Termination" is defined as

> the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any **Employee** in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment.

(Id. at Section III(S).)

Accordingly, the Court considers whether the Perryman Complaint alleges a wrongful termination.  Although there is no express "wrongful termination" count, the essence of the Perryman Complaint regards Perryman's alleged wrongful termination from the company.  For example, Count One seeks a declaratory judgment that "her [Perryman's] employment with C&L, including her positions as an officer, director and employee and Equity Manager were unlawfully terminated by Defendants' actions at and prior to the July 14, 2011, Board meeting."  (Perryman Compl. ¶ 67; see Prayer for Relief ¶ 1.)  Count Four alleges that Carlson, Crawford, and the Carlson Revocable Trust

> . . . treated Perryman in an unjust, illegal, fraudulent, and unfairly prejudicial manner in her capacity as a shareholder, officer, director, and employee of C&L, and as a trustee and voting trustee.  Furthermore, through Defendants' actions and omissions, Perryman has been deprived of her reasonable expectation to maintain her long-established rights and authority as an employee, officer, director, and shareholder of C&L and as a trustee of the Carlson Revocable Trust.

(Perryman Compl. ¶ 80.)  Count Four also seeks damages for "lost compensation and benefits which Bernie [Perryman] reasonably anticipated would continue until her retirement at age 70."  (Id. ¶ 81(c).)  And, Count Seven alleges that "Defendants terminated and/or threatened to terminate Perryman's employment without proper notice

13

. . . ." (Id. ¶ 90.) Such language, particularly when read in the context of the underlying facts, alleges a wrongful termination, and thus, a "wrongful act," under the Policy.

Next, the Court considers Defendant's argument that the Perryman Complaint fails to plead a wrongful termination because it does not allege any specific board vote to terminate Perryman in accordance with Minnesota law.[2] (February 7, 2014, Hr'g Tr. at 4-5; Def.'s Reply Mem. for Mot. to Dismiss at 6-8 [Doc. No. 18].) The Court respectfully disagrees that the Perryman Complaint required such detail to raise the possibility of coverage under the Policy. The Perryman Complaint refers to the C&L board meeting on July 14, 2011, at which Bengtson, acting as a spokesperson for Carlson and Crawford, read a prepared statement that the Board had decided to terminate Perryman's employment. (Perryman Compl. ¶¶ 52, 55.) It is also alleged that the Board refused to entertain any discussion or debate about the reasons for her termination. (Id. ¶ 55.) Perryman further alleges being told by Bengtson that if she did not sign the resignation documents, she would be terminated for "justifiable cause" immediately. (Id. ¶¶ 58, 59.) Faced with such a threat, and lacking any ability to negotiate the resignation documents or consider them properly, Perryman signed the documents. (Id. ¶ 60.) These allegations collectively convey Perryman's central claim that the Board wrongfully terminated her employment, whether actually or constructively. Whether the Board's actions actually complied with Minnesota law is academic at this time.

---

[2] Defendants cite Minnesota Statute § 302A.237 for its language that a "board shall take action by [sic] affirmative vote . . . ." (Id. at 5); MINN. STAT. § 302A.237, subd. 1 (2013).

Defendant additionally argues that there is no claim for wrongful termination without a claim for monetary damages, and Count One of the Perryman Complaint does not seek monetary damages. (Def.'s Reply Mem. for Mot. to Dismiss at 5 [Doc. No. 18].) Under the Policy, "[t]he **Company** will pay on behalf of the **Insured**, **Loss** . . . that the **Insured** shall become legally obligated to pay because of **Claims** . . . for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**."  (USLI Employment Practices Liability Policy, Section I.) As defined by the Policy,

> **"Loss"** means damages and settlements, front pay and back pay, and pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award or an express obligation to make payments in the event of the termination of employment.

(Id. at Section III(K).) Although Count One of the Perryman Complaint does not seek monetary damages, the Prayer for Relief seeks: "an award of damages against Defendants, jointly and severally, upon all counts, in excess of $50,000," "[a]n award . . . requiring Defendants to pay all of Plaintiff's costs, disbursements, attorneys' fees, expert fees and expenses," and "[a]n award of prejudgment and post-judgment interest." (Perryman Compl., Prayer for Relief ¶¶ 3-5.) The Court finds that these requests fall squarely within the realm of "damages and settlements," and "pre-judgment and post judgment interest," as contemplated by the "loss" definition.

For these reasons, the Court finds that the Perryman Complaint adequately alleged a wrongful termination under the Policy.

2. **"Solely"**

Defendant argues that Plaintiffs are not entitled to coverage because Carlson and Crawford "were not acting 'solely' as Insureds, but rather, were acting in multiple non-Insured capacities." (Def.'s Mem. in Supp. of Mot. to Dismiss at 14 [Doc. No. 11].) At oral argument, Defendant abandoned its argument that Carlson and Crawford were acting as shareholders, (Feb. 7, 2014, Hr'g Tr. at 11), but maintains that they were acting for personal, rather than business, purposes. (Id. at 13; Def.'s Mem. in Supp. of Mot. to Dismiss at 15-16 [Doc. No. 11].)

The Court respectfully disagrees. Although Defendant cites language from the Perryman Complaint that Carlson and Crawford engaged in "self-dealing" and "self-interested, conflicted actions designed to benefit themselves," such language alone is insufficient to show that Carlson and Crawford were acting in multiple capacities. (Perryman Compl. ¶¶ 3, 62.) Defendant relies on Carlson v. Twin City Fire Ins. Co., No. 09-608, 2009 WL 1793887, at *3-4 (D. Minn. June 23, 2009), in which the Court found that an association's policy did not cover the wrongful conduct alleged, because the conduct arose not from duties owed by Carlson to the association, but rather, from his personal dealings for a separate business. Perryman, however, does not allege any actions taken by Carlson or Crawford for the benefit of a separate business.

Moreover, it is disputed whether Defendants were acting out of self-interest in terminating Perryman. Plaintiffs argue, for example, that "C&L benefitted from the eradication of an underperforming and unreliable Equity manager and CEO [Perryman] who was not fulfilling her job duties." (Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss at

16

19 [Doc. No. 16].) And, the minutes from the July 14, 2011, meeting reflect the Board's stated reasons for terminating Perryman: her alleged (1) disregard of the requirements and duties of a Chief Executive Officer and Equity Manager; (2) failure to oversee C&L's operations and expenses properly; (3) failure to reduce excess discretionary expenses in light of declining revenues; and (4) time and company resources devoted to organizations that did not relate to C&L's business. (Mins. of the C&L Board Meeting at 1.) Furthermore, Plaintiffs assert that Carlson and Crawford did not benefit personally from Perryman's termination, because Perryman was simply replaced by another Equity Manager and Chief Executive Officer who retained voting control. (Feb. 7, 2014, Hr'g Tr. at 22-23.) Thus, this inquiry is fact-intensive and inappropriate to resolve on a motion to dismiss.

Finally, the board minutes from the July 14, 2011, meeting show that Carlson and Crawford acted in their official board capacity when terminating Perryman. The minutes note the presence of Carlson, Crawford, and Perryman—"all of the members of the Board of Directors"—as constituting a quorum. (Mins. of the C&L Board Meeting at 1.) By vote of the Directors, Bengtson was elected Spokesperson and Secretary for the meeting. (Id.) Bengtson stated that a majority of the Board of Directors had decided that Perryman's employment should be terminated immediately, and Perryman was asked to resign voluntarily. (Id.) Elsewhere, the minutes describe Carlson and Crawford as "acting as a majority of the members of the Board of Directors" during this meeting:

> He [Bengtson] stated reasons for the decision, as found by Ms. Carlson and Ms. Crawford, acting as a majority of the members of the Board of Directors . . . .

17

> . . . Mr. Bengtson, acting as Spokesperson for Ms. Carlson and Ms. Crawford, who were acting as a majority of the members of the Board of Directors, offered Ms. Perryman the opportunity to resign from all of her positions with the Corporation, and as consideration for such resignation also offered certain benefits, terms and conditions as set forth in a written offer letter dated July 14, 2011.

(Id.)  Carlson, Crawford, and Perryman signed the written offer letter.  (Id. at 1-2.)  Carlson and Crawford accepted and approved the board minutes as well.  (Id. at 7.)  Accordingly, the Court finds that, on the face of the Complaint, it is alleged that Carlson and Crawford wrongfully terminated Perryman solely in their official capacity as members of the Board, sufficient to avoid dismissal of the Complaint.

## IV.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Doc. No. 9] is **DENIED**.

Dated:      June 24, 2014                             s/ Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Court Judge